# United States Court of Appeals
## For the First Circuit

No. 00-2341

CASHMERE & CAMEL HAIR MANUFACTURERS INSTITUTE,
F/K/A CAMEL HAIR & CASHMERE INSTITUTE OF AMERICA, INC.,
AND L.W. PACKARD & CO., INC.,

Plaintiffs, Appellants,

v.

SAKS FIFTH AVENUE,
HARVE BENARD, LTD. AND FILENES BASEMENT,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before
Torruella, Circuit Judge,
Rosenn,[*] Senior Circuit Judge,
and Stahl, Senior Circuit Judge.

Robert J. Kaler, with whom Gadsby Hannah, LLP, was on brief, for appellants.
David B. Bassett, with whom William F. Lee, Michael J. Summersgill, Colleen E. Dunham, Hale and Dorr, LLP, Robert P. Lynn, Jr. and Robert P. Lynn, Jr. LLC, were on brief, for appellees.

April 1, 2002

---

[*] Of the Third Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Plaintiffs-appellants L.W. Packard & Co. ("Packard") and Cashmere & Camel Hair Manufacturers Institute (the "Institute") appeal from the district court's entry of partial summary judgment dismissing their false advertising claims under the Lanham Act, 15 U.S.C. § 1125(a), and Massachusetts state law.  In particular, Packard challenges the dismissal of its claims for money damages, while the Institute argues that the district court erred in dismissing one of its claims for injunctive relief.  Because we conclude that the district court relied on impermissible inferences in favor of the moving party in reaching its conclusions, we reverse and remand the case for action consistent with this opinion.

### Background[1]

The Institute is a trade association of cashmere manufacturers dedicated to preserving the name and reputation of cashmere as a speciality fiber.  Packard is a member of the Institute and a manufacturer of cashmere and cashmere-blend fabric.

In 1993, defendant-appellee Harve Benard, Ltd. ("Harve Benard") began manufacturing a line of women's blazers that were labeled as containing 70 percent wool, 20 percent nylon, and 10 percent cashmere.  Its labels also portrayed the blazers as "A Luxurious Blend of Cashmere and Wool," "Cashmere and Wool," or "Wool and Cashmere."  Harve Benard sold large quantities of these

---

[1]  We recite the facts in the light most favorable to plaintiffs, the nonmoving party.  See Champagne v. Servistar Corp., 138 F.3d 7, 8 (1st Cir. 1998).

cashmere-blend garments to retail customers, including defendants Saks Fifth Avenue ("Saks") and Filene's Basement.

In 1995, plaintiffs began purchasing random samples of the Harve Benard garments and giving them to Professor Kenneth Langley and Dr. Franz-Josef Wortmann, experts in the field of cashmere identification and textile analysis. After conducting separate tests on the samples, the experts independently concluded that, despite Harve Benard's labels to the contrary, the garments contained no cashmere.[2] In addition, Dr. Wortmann found that approximately 10 to 20% of the fibers in the Harve Benard garments were recycled -- that is, reconstituted from the deconstructed and chemically-stripped remnants of previously used or woven garments.

Relying on their experts' findings, plaintiffs filed this suit in district court claiming that defendants falsely advertised their garments in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Massachusetts Unfair and Deceptive Trade Practices Act, Mass. Gen. Laws ch. 93A, and the common law of unfair competition. More specifically, plaintiffs claim that the garments were mislabeled in two material respects: (1) the Harve Benard blazers contained significantly less than the 10% cashmere they were represented as having ("cashmere content claim"); and (2) any cashmere that the blazers did contain was not virgin, as the unqualified word "cashmere" on the label suggests, but recycled

---

[2] The experts found that, at most, the garments contained only trace levels (less than 0.1%) of cashmere.

("recycled cashmere claim").[3] Each plaintiff seeks a different form of relief for these alleged misrepresentations: whereas the Institute seeks a permanent injunction against any future mislabeling, Packard seeks monetary damages on the theory that it lost sales as a result of the manufacture and sale of the mislabeled garments.

The district court granted partial summary judgment in favor of defendants, dismissing both of Packard's claims for money damages and seemingly dismissing the Institute's request for injunctive relief on its recycled cashmere claim.[4] The only ruling in plaintiffs' favor -- and thus the only ruling that they do not appeal -- was the district court's denial of defendants' summary judgment motion on the Institute's cashmere content claim for injunctive relief.

After the district court's summary judgment ruling, however, the Institute chose to voluntarily dismiss this remaining claim so that it could expedite the appeal of its recycled cashmere claim for injunctive relief.

### Standard of Review

Plaintiffs appeal the district court's summary judgment dismissing Packard's cashmere content claim for money damages;

---

[3] After this suit was filed, Harve Benard agreed to label its 1996 and subsequent line of blazers as being made from recycled cashmere.

[4] As discussed further below, it is not entirely clear from the summary judgment order whether the district court intended to dismiss the Institute's request for injunctive relief on its recycled cashmere claim.

-4-

Packard's recycled cashmere claim for money damages; and the Institute's recycled cashmere claim for injunctive relief. We review de novo the district court's summary judgment dismissing plaintiffs' claims. See Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993) (internal quotation marks omitted). In exercising our review, we construe the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

For the purposes of this appeal, defendants concede that the issue of whether the garments were mislabeled is both material and genuinely in dispute. They argue, however, that there is no evidence that their mislabeling deceived any members of the consuming public or caused plaintiffs any harm. Defendants thus seek summary judgment on the grounds that plaintiffs cannot adduce

sufficient evidence of consumer deception or causation to satisfy the requirements of the applicable law.

## Discussion

### I.

Before delving into the merits of plaintiffs' appeal, we pause to address a jurisdictional challenge. Defendants argue that the Institute has no legal standing to seek appellate review because the Institute is impermissibly attempting to appeal from its own voluntary dismissal. After the district court's grant of summary judgment, the Institute had at least one remaining claim against defendants. Rather than pursuing that claim to trial, however, the Institute voluntarily moved to dismiss its claim with prejudice. Shortly thereafter, the Institute timely filed the instant appeal. Since it is well known that generally "a plaintiff may not appeal a voluntary dismissal because there is no involuntary or adverse judgment against him," Bell v. City of Kellogg, 922 F.2d 1418, 1421 (9th Cir. 1991), defendants contend that this Court lacks jurisdiction over the Institute's improper appeal.

Defendants acknowledge in their brief, however, that there is a narrow exception which permits appeals from voluntary dismissals where the dismissal was sought to expedite review of a prejudicial interlocutory ruling. See John's Insulation, Inc. v. L. Addison & Assocs. Inc., 156 F.3d 101, 107 (1st Cir. 1998) (noting that "most circuits hold that voluntary dismissals, and especially those with prejudice, are appealable final orders," and

-6-

holding that "a plaintiff that deems an interlocutory ruling to be so prejudicial as to deserve immediate review . . . has the alternative of dismissing the complaint voluntarily"); <u>Martin</u> v. <u>Franklin Capital Corp.</u>, 251 F.3d 1284, 1288 (10th Cir. 2001) (same holding). Nevertheless, defendants assert that the Institute does not fall within this exception because its voluntary dismissal was not sought for the purposes of obtaining immediate appellate review of a prior order, but rather because the Institute realized that its remaining claim was without merit.

Defendants' argument is undermined, however, by that portion of the record establishing that the Institute voluntarily dismissed its remaining claim, in part, so that it could appeal adverse rulings in the summary judgment order. In its motion to dismiss, the Institute unequivocally stated:

> "[The Institute] has determined that the most appropriate course of action is to dismiss [its remaining claim] with prejudice to avoid an unnecessary trial on that issue, without prejudice to the plaintiffs' right to appeal the broader rulings dismissing the bulk of their claims."

The Institute's motion thus demonstrates that (1) it believed that the summary judgment order significantly prejudiced its case by dismissing "the bulk of [its] claims," and (2) the Institute sought the voluntary dismissal to expedite appellate review of the prior order. Because the Institute has satisfied the prerequisites for appealing a voluntary dismissal, <u>see</u> <u>John's Insulation</u>, 156 F.3d at 107 (noting that "the proper course of action is to file a motion for voluntary dismissal with prejudice, stating explicitly that the

-7-

purpose is to seek immediate review of the interlocutory order in question"), we conclude that the Institute is properly before this Court.

At oral argument, defendants unveiled a new contention: they claimed that the Institute could not avail itself of the exception because the summary judgment order did not substantially prejudice the Institute, as is required by existing caselaw. See id. In particular, defendants argued that since the summary judgment order did not dismiss any of the Institute's claims for injunctive relief, there is insufficient prejudice to allow the Institute to appeal its voluntary dismissal.

Defendants' argument fails for two reasons. First, defendants waived this argument by failing to raise it in their brief. See Frazier v. Bailey, 957 F.2d 920, 932 (1st Cir. 1992) (ruling that arguments not fully presented in appellate brief are waived). Defendants cannot utilize oral argument as a forum for unveiling new arguments of which plaintiffs did not have proper notice or opportunity to challenge.

Second, it appears that the district court actually dismissed the Institute's recycled cashmere claim for injunctive relief, thereby giving the Institute sufficient prejudice to appeal its voluntary dismissal. As discussed in more detail below, for a plaintiff to succeed on a false advertising claim under the Lanham Act, he must demonstrate, among other things, that the alleged misrepresentation deceived the public or had a tendency to deceive the public. See Clorox Co. P.R. v. Proctor & Gamble Commercial

Co., 228 F.3d 24, 33 n.6 (1st Cir. 2000). In some limited circumstances, however, the law absolves the Lanham Act plaintiff of this burden and allows him to benefit from a presumption of consumer deception. See id. at 33 (noting that a court "may grant relief without considering evidence of consumer reaction"). In assessing whether the Institute demonstrated consumer deception, the district court determined that the Institute was entitled to a presumption of consumer deception on its claim that defendants overstated the cashmere content, but was not entitled to such a presumption on its recycled cashmere claim.[5] The district court then concluded that "[b]ased on the presumption alone, Defendants' motion for summary judgment should be denied . . . " It is clear, then, that the district court explicitly denied summary judgment only on the Institute's cashmere content claim, as that is the only claim to which the district court applied "the presumption."

The district court, however, neglected to determine whether the Institute demonstrated consumer deception, absent a presumption, on its recycled cashmere claim. The parties draw opposite conclusions from the district court's ambiguous resolution of this matter: ironically, plaintiffs argue that the claim was dismissed for failure to demonstrate consumer deception, while defendants assert that it was not.

---

[5] The district court mistakenly referred to this presumption as a "presumption of materiality." For the sake of clarity, we refer to materiality only as that element which requires a plaintiff to show that the alleged misrepresentations "influence[d] the purchasing decision." Clorox, 228 F.3d at 33 n.6. Whether a misrepresentation is material is thus a separate inquiry from whether a misrepresentation deceived the consuming public. See id.

Though both arguments are equally plausible given the district court's silence on the issue, we conclude that plaintiffs' assertion that the claim was dismissed more persuasive in light of the circumstances. Immediately after skipping over the issue of whether the Institute demonstrated consumer deception on its recycled cashmere claim, the court assessed whether Packard had proved consumer deception on its claims for money damages. After analyzing the proffered evidence, the district court found that Packard's proof of consumer deception was insufficient. Since the district court dismissed Packard's claims, in part, because Packard was unable to demonstrate consumer deception, it is reasonable to assume that the district court intended to dismiss the Institute's remaining claim for the same reason, especially because plaintiffs were relying on the same evidence to prove both.[6]

Considering the ambiguity surrounding the district court's order on this issue, the apparent intention of the district court to dismiss the Institute's recycled cashmere claim, and the

_____

[6] Furthermore, the district court ruled that plaintiffs' recycled cashmere claim was one of implied falsity. Absent a presumption, an implied falsity claim can be established only by actual evidence of deception, "usually in the form of market research or consumer surveys, showing exactly what message ordinary customers received from the ad." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:55 (4th ed. 2001); see also Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 15 (1st Cir. 1986) (noting that "consumers' reaction is the starting point when the allegation is based merely on the tendency of the defendant's representation to deceive"). Plaintiffs failed to offer any evidence of surveys or market research to demonstrate consumer deception. Given this lack of evidence, it is reasonable to assume that the district court intended to rule -- if it did not actually -- that the Institute could not meet its burden of demonstrating consumer deception on its recycled cashmere claim.

Institute's dismissal of its remaining claim to seek immediate appellate review of the summary judgment order, we find that the Institute has satisfied the prerequisites to appeal its voluntary dismissal.

## II.

The Lanham Act prohibits false and misleading descriptions of products and services in interstate commerce. See 15 U.S.C. § 1125(a). The statute was designed to protect consumers and competitors from any duplicitous advertising or packaging which results in unfair competition. See id.[7]

To prove a false advertising claim under the Lanham Act, a plaintiff must demonstrate that (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial

---

[7] The false advertising provisions of the Lanham Act provide:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

-11-

segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. See Clorox, 228 F.3d at 33 n.6.

A plaintiff can succeed on a false advertising claim by proving either that the defendant's advertisement is literally false or implicitly false -- that is, the advertisement is true or ambiguous yet misleading. See id. Where the advertisement is literally false, a violation may be established without evidence of consumer deception. See id.; Balance Dynamics Corp. v. Schmitt Indus., 204 F.3d 683, 693 (6th Cir. 2000) (noting that when a statement is literally false, "a plaintiff need not demonstrate actual customer deception in order to obtain relief "). Where the advertisement is implicitly false, however, "an additional burden is placed upon the plaintiff to show that the advertisement . . . conveys a misleading message to the viewing public." Clorox, 228 F.3d at 33.[8]

---

[8] As discussed below, a plaintiff alleging an implied falsity claim, however, is relieved of the burden of demonstrating consumer deception when there is evidence that defendants intentionally deceived the consuming public. See Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc., 926 F.2d 134, 140 (2d Cir. 1991) (ruling, with respect to an implied falsity claim, that "[o]nce it is shown that a defendant deliberately engaged in a deceptive commercial practice, we agree that a powerful inference may be drawn that the defendant has succeeded in confusing the public").

In addition, this Court has recognized a difference in the burdens of proof between injunctive relief claims and monetary damages claims under the Lanham Act. In Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., 567 F.2d 154 (1st Cir. 1977), we held that whereas a showing that the defendant's activities are likely to cause confusion or to deceive customers is sufficient to warrant injunctive relief, a plaintiff seeking damages must show actual harm to its business. See id. at 160-61.[9]

With these elaborate and intricate statutory requirements in mind, we assess plaintiffs' claims to determine if there is enough competent evidence for a reasonable factfinder to conclude that they have satisfied their burdens of proof under the Lanham Act.

### A. Concessions

For the purposes of this appeal, defendants concede that they have made a false or misleading statement of fact in describing their blazers. Defendants also concede that they placed these misrepresentations in interstate commerce.

### B. Materiality

The materiality component of a false advertising claim requires a plaintiff to prove that the defendant's deception is

---

[9] Furthermore, unlike a plaintiff seeking injunctive relief who only has to show that the misrepresentation had the tendency to deceive, a plaintiff seeking monetary damages must show that consumers were actually deceived by the misrepresentation, PPX Enter., Inc. v. Audiofidelity Enter., Inc., 818 F.2d 266, 271 (2d Cir. 1987), unless he can avail himself of a presumption to that effect.

"likely to influence the purchasing decision." Clorox, 228 F.3d at 33 n.6. One method of establishing materiality involves showing that the false or misleading statement relates to an "inherent quality or characteristic" of the product. Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997).[10]

On their first claim, plaintiffs argue that overstating the cashmere content of cashmere-blend blazers is material because the misrepresentation relates to an inherent characteristic of the product sold. Indeed, it seems obvious that cashmere is a basic ingredient of a cashmere-blend garment; without it, the product could not be deemed a cashmere-blend garment or compete in the cashmere-blend market. Thus, it seems reasonable to conclude that defendants' misrepresentation of the blazers' cashmere content is material because it relates to a characteristic that defines the product at issue, as well as the market in which it is sold.

Moreover, defendants prominently labeled their garments as "Cashmere and Wool," "A Luxurious Blend of Cashmere and Wool," "Cashmere Blend," or "Wool and Cashmere," and their garments were conspicuously advertised in stores and catalogues as "Cashmere Blazers." It seems reasonable to infer from defendants' aggressive marketing strategy highlighting the "cashmere" nature of the

---

[10] Whether a misrepresentation is material has nothing to do with the nature of the relief sought or the defendant's intent. Rather, materiality focuses on whether the false or misleading statement is likely to make a difference to purchasers. See J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:35 (4th ed. 2001). Thus, even when a statement is literally false or has been made with the intent to deceive, materiality must be demonstrated in order to show that the misrepresentation had some influence on consumers.

-14-

blazers that defendants themselves believed cashmere to be an inherent and important characteristic of the blazers.

With respect to their second claim, plaintiffs argue that defendants' misrepresentation of the recycled nature of their cashmere also relates to an inherent characteristic of the garments. To substantiate this point, plaintiffs offer the affidavit of Karl Spilhaus, the Institute's president, in which he explains:

> The process of recycling . . . involves the use of machinery to tear apart existing garments, during or after which they are subjected to a wet processing with the resulting wool fibers dried out, frequently carbonized (subjected to heat and sulphuric acid), and then re-used in the manufacture of other fabric.
>
> In the process of tearing apart existing garments, considerable damage is inevitably done to the fibers in those garments, and additional damage is also done by the acid or other chemical treatments applied to them during the recycling process. The result is that recycled fibers frequently have substantial surface damage to their scale structure which effects [sic] their ability to felt, or bind together, thereby effecting [sic] the ability of a recycled fiber fabric to hold together as well or as long as fibers which are being used in the fabric for the first time. Such fabric will be rougher to the touch and lack "handle," plushness or softness normally associated with quality woolen or cashmere products.

Given the degree to which recycled fibers affect the quality and characteristics of a garment, a rational factfinder could conclude that consumers, especially experienced ones like retail stores, would likely be influenced in their purchasing

-15-

decisions by labeling that gave the false impression that the garments contained virgin cashmere.[11]

In fact, plaintiffs offer anecdotal evidence as corroboration for this very assertion. In January 1996, Saks, one of Harve Benard's largest customers, learned that the cashmere blazers it had purchased from Harve Benard might contain recycled cashmere. Shortly thereafter, Lynne Ronon, the merchandise manager at Saks, met with representatives of Harve Benard to inform them that Saks did not wish to sell garments containing recycled cashmere. After the meeting, Carole Sadler, the associate counsel for Saks, sent Harve Benard a letter restating Saks' position as set forth by Ronon: "Saks does not wish to sell jackets containing recycled cashmere."

Rather than viewing this anecdote as evidence of how an actual consumer's purchasing decision was influenced by the misrepresentation, defendants draw the opposite conclusion by focusing on Saks' ultimate purchasing decision. Notwithstanding its earlier position, Saks eventually decided to sell Harve Benard garments containing recycled cashmere. Moreover, Sadler testified that Saks' initial refusal to sell recycled cashmere garments was

---

[11] The relevant "consumers" are those groups of people to whom the advertisement was addressed. See Johnson & Johnson Merck Consumer Pharm. Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992) (noting that "[t]he question in such cases is -- what does the person to whom the advertisement is addressed find to be the message?") (internal quotations and citations omitted). In this case, the relevant consumers include, but are not limited to, the retail stores that purchased Harve Benard garments instead of buying from Packard's garment manufacturer customers and individual purchasers.

merely a strategic move on an issue "that could ripen into a negotiation or a renegotiation" between the parties.

The problem with defendants' rebuttal argument, however, is that it ignores what a rational juror could find after drawing all reasonable inferences in plaintiffs' favor. Saks' initial refusal to sell the recycled cashmere garments; Saks' belief that the matter could lead to a negotiation; and the actual negotiations that took place before Saks agreed to continue selling the garments are competent evidence from which a reasonable juror could conclude that the issue related to an inherent quality or characteristic of the garment. Indeed, it makes little sense that Saks and Harve Benard would spend so much time and effort resolving a matter they deemed immaterial.

Furthermore, it is important to reiterate, as the caselaw explicitly states, that plaintiffs are not required to present evidence that defendants' misrepresentation actually influenced consumers' purchasing decisions, but that it was likely to influence them. See Clorox, 228 F.3d at 33 n.6. Given the significant degree to which using recycled fibers adversely impacts the quality, texture, and characteristics of cashmere, and considering Saks' erratic behavior upon learning of the mislabeling, we find that plaintiffs have presented sufficient evidence to demonstrate that defendants' recycled cashmere misrepresentation was material.

## C. Consumer Deception

The next element of a false advertising claim under the Lanham Act requires plaintiffs to demonstrate that the alleged misrepresentation deceived a substantial portion of the consuming public. See Clorox, 228 F.3d at 33 n.6.[12] Usually consumer deception is demonstrated through surveys, which establish that consumers were misled by the alleged misrepresentations. See Johnson & Johnson Merck, 960 F.2d at 298. Plaintiff-appellant Packard argues, however, that it does not have to shoulder the burden of presenting this evidence because existing caselaw allows plaintiffs like it who allege claims that are literally false to avail themselves of a presumption of consumer deception. See Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993) (ruling that "a plaintiff must prove either literal falsity or consumer confusion, but not both"); Johnson & Johnson v. GAC Int'l, Inc., 862 F.2d 975, 977 (2d Cir. 1988) ("When a . . . representation is literally or explicitly false, the court may grant relief without reference to the advertisement's impact on the buying public.").

In response, defendants recognize that a presumption of consumer deception is available to plaintiffs seeking injunctive relief for literal falsity claims; however, they argue that the

---

[12] Since Packard is seeking monetary damages, it must demonstrate that consumers were actually deceived by the misrepresentations. Only plaintiffs seeking injunctive relief face the lesser burden of demonstrating a tendency to deceive. See supra note 9.

presumption does not apply, without more, to plaintiffs seeking money damages for literal falsity claims.

Though there was once support for the assertion that consumer deception cannot be presumed simply because a plaintiff alleges a literal falsity claim for money damages, see PPX, 818 F.2d at 272 (noting that as of 1987 the presumption had only been applied to literal falsity claims for injunctive relief), it has become the practice of most circuits to apply the presumption to all literal falsity claims. See Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 497 (5th Cir. 2000) (holding, on a claim for damages and injunctive relief, that "when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers. . . . [However] [p]laintiffs looking to recover monetary damages for false or misleading advertising that is not literally false must prove actual deception"); EFCO Corp. v. Symons Corp., 219 F.3d 734, 740 (8th Cir. 2000) (ruling, on a claim for damages, that "when an advertisement is literally false . . . the plaintiff need not prove that any of its customers were actually persuaded by the advertising"); Balance, 204 F.3d at 693 (noting that a presumption of consumer deception applies to a literal falsity claim for damages so long as there is other proof of marketplace damages); B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 168 F.3d 967, 971 (7th Cir. 1999) (ruling, on a damages claim, that "[w]here the statement in question is actually false,

-19-

then the plaintiff need not show that the statement either actually deceived consumers or was likely to do so").

In fact, defendants' argument contradicts this Court's explicit pronouncements on the issue. In assessing whether a Lanham Act claim for injunctive relief and money damages had been properly dismissed, we stated, "If the advertisement is literally false, the court may grant relief without considering evidence of consumer reaction. In the absence of such literal falsity, an additional burden is placed upon plaintiff to show that the advertisement . . . conveys a misleading message to the viewing public." Clorox, 228 F.3d at 33 (internal citations omitted).

Moreover, applying a presumption of consumer deception to all literal falsity claims, irrespective of the type of relief sought, makes sense. When a plaintiff demonstrates that a defendant has made a material misrepresentation that is literally false, there is no need to burden the plaintiff with the onerous task of demonstrating how consumers perceive the advertising. See Balance Dynamics, 204 F.3d at 693 (noting that "[b]ecause proof of 'actual confusion' may be difficult to obtain, most of the circuits have ruled that when a statement is literally false, a plaintiff need not demonstrate actual customer deception in order to obtain relief under the Lanham Act"). Common sense and practical experience tell us that we can presume, without reservation, that consumers have been deceived when a defendant has explicitly misrepresented a fact that relates to an inherent quality or characteristic of the article sold. To presume as much requires

-20-

neither a leap of faith nor the creation of any new legal principle.[13]

Because defendants do not dispute that overstating cashmere content is a literal falsity claim, we apply a presumption of consumer deception in plaintiffs' favor on this claim. Based on this presumption, and defendants' failure to present evidence to rebut it, Packard has satisfied its burden of demonstrating consumer deception on its cashmere content claim.

Whether literal falsity is involved in plaintiffs' claim that defendants improperly labeled their goods as cashmere rather than recycled cashmere, however, is a contentious issue. Defendants argue that this claim is, by definition, one of implied falsity -- that is, a representation that is literally true but in context becomes likely to mislead. See Clorox, 228 F.3d at 33 (defining an implied falsity claim as one in which the "advertisement, though explicitly true, nonetheless conveys a misleading message to the viewing public"). As further support for their argument, defendants offer a simple syllogism: all suits based on implied messages are implied falsity claims; since

_____

[13] Defendants also argue that before the presumption of consumer deception can apply to a literal falsity claim for damages, the plaintiff must demonstrate that the defendant intentionally deceived the consuming public. None of the five circuit cases cited supra, however, speaks of the intent to deceive as a prerequisite to applying a presumption of consumer deception on a literal falsity claim. As discussed in more detail below, the intent to deceive is an independent basis for triggering a presumption of consumer deception. See William H. Morris Co. v. Group W, Inc., 66 F.3d 255, 258 (9th Cir. 1995) (ruling, on an implied falsity claim, that "[i]f [defendant] intentionally misled consumers, we would presume consumers were in fact deceived and [defendant] would have the burden of demonstrating otherwise").

plaintiffs assert that the term "cashmere" on the garments' labels implicitly conveys the false message that the garments contain virgin cashmere, their claim must be one of implicit falsity.

We agree with defendants that normally a claim like plaintiffs', in which the representation at issue is literally true (the garments do contain cashmere as the label states) but is misleading in context (defendants failed to disclose that the cashmere is recycled), is evaluated as an implied falsity claim. See id. However, we disagree with defendants' assertion that all claims that rely on implied messages are necessarily implied falsity claims. In Clorox, this Court noted that "[a]lthough factfinders usually base literal falsity claims upon the explicit claims made by an advertisement, they may also consider any claims the advertisement conveys by 'necessary implication.'" Id. at 34-35. We explained that "[a] claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." Id. at 35.

After drawing all reasonable inferences in favor of the nonmoving party, a rational factfinder could conclude that plaintiffs' recycled cashmere claim is one of literal falsity. The Wool Products Labeling Act, 15 U.S.C. § 68 et seq., requires recycled garments and fabrics, including cashmere, to be labeled as such. As a result, whenever a label represents that a garment contains the unqualified term "cashmere," the law requires that the garment contain only virgin cashmere. The Act, then, is

essentially telling consumers that garments labeled "cashmere" can be presumed to be virgin cashmere "as if it had been explicitly stated." Clorox, 228 F.3d at 35. Plaintiffs also presented evidence demonstrating that experienced retailers, like Saks, were aware of the Act's requirements. Based on this evidence, we conclude that plaintiffs have presented sufficient evidence to demonstrate that consumers would view the term "virgin" as necessarily implicated when a garment was labeled "cashmere."

The district court rejected this argument because "[i]t is at least equally plausible to infer that Congress [in enacting the Wool Product Labeling Act] was concerned that it would be misleading for a seller to fail to distinguish between virgin and recycled cashmere, even though it would not be literally false to do so." The district court's argument, however, substitutes an irrelevant inquiry for the required analysis. Rather than assessing what consumers would necessarily infer from the unqualified term "cashmere" in light of the Act's requirements, the district court delved into issues of congressional intent and statutory interpretation. See Johnson & Johnson Merck, 960 F.2d at 297 ("The question in such cases is -- what does the person to whom the advertisement is addressed find to be the message?"). Because the Act necessarily implies the term "virgin" anytime the unmodified word "cashmere" appears on a garment's label and experienced retailers, like Saks, were aware of the Act's requirements, we rule that plaintiffs' recycled cashmere claim can be reasonably seen as one of literal falsity. Therefore,

-23-

plaintiffs may benefit from a presumption of consumer deception on this claim.

Even if plaintiffs' recycled cashmere claim did not involve literal falsity, plaintiffs would still be able to avail themselves of a presumption of consumer deception on alternative grounds. It is well established that if there is proof that a defendant intentionally set out to deceive or mislead consumers, a presumption arises that customers in fact have been deceived. See Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1333 (8th Cir. 1997) (approving of a presumption of consumer deception upon a finding that defendant acted deliberately to deceive); see also U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1041 (9th Cir. 1986) (same).

As evidence of defendants' intentional mislabeling of the blazers' recycled cashmere, plaintiffs introduced a letter dated January 13, 1995, addressed to Harve Benard's president, Bernard Holtzman, from one of Harve Benard's testing laboratories. On the top of the letter, there is a handwritten note from "L. Pedell," an agent for Harve Benard, which states, "Also see note from mill below. This is an on-going saga." The note that Pedell is referring to reads, in pertinent part, "FOR YOUR INFO PLS NOTE MILL IS USING RECICLED CHASMERE [sic]."[14] Despite receiving notice that

---

[14] Defendants argue that since Holtzman testified that "it is very possible that I didn't get [the letter]," and because there is no evidence to contradict his assertion, it cannot be inferred that he received it. The evidence to cast doubt on Holtzman's testimony, however, comes from his own tongue. He also stated that "I couldn't be sure either way [whether I received the letter]." Given Holtzman's equivocal responses, we find that plaintiffs are

-24-

its blazers were being made from recycled cashmere, Harve Benard continued to market its garments without any "recycled" designation, as required by law, until months after the commencement of this lawsuit in 1996. Thus, Harve Benard's unwillingness to comply with the law, despite being on notice of its violation, can be seen as an attempt deliberately to deceive the consuming public.

In response, defendants offer several factual and legal arguments, none of which we find persuasive. First, defendants argue that a presumption of consumer deception cannot be triggered on an implied falsity claim, even if there is evidence of an intent to deceive. Defendants' claim, however, is undermined by several circuit cases that have explicitly held otherwise. See Porous, 110 F.3d at 1337 (applying presumption of consumer deception to an implied falsity claim when there is intent to deceive); William H. Morris, 66 F.3d at 258-59 (stating that a presumption of consumer deception applies to an implied falsity claim where there is sufficient evidence of an intent to deceive); Johnson & Johnson Merck, 960 F.2d at 298-99 (same); Resource Developers, 926 F.2d at 140 (same). The justification for applying the presumption whenever there is evidence of intentional deception is perspicuous: "The expenditure by a competitor of substantial funds in an effort to deceive customers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in

_____

entitled to the reasonable inference that a facsimile letter addressed to Holtzman was received by him.

-25-

fact, being deceived." U-Haul, 793 F.2d at 1041. This reasoning holds true regardless of whether the claim that plaintiffs allege involves an implied or literal falsity.

Second, defendants argue that the fact that an Italian mill stated that it was using recycled cashmere has little bearing on whether the mill was using cashmere that would be considered recycled under the definitions of the Wool Products Labeling Act. Defendants seem to misunderstand or underestimate the import of the letter. One of Harve Benard's mills informed the president of the company that its cashmere-blend garments contained recycled fabric. Rather than investigating the matter to determine whether Harve Benard was violating the law by not properly labeling its cashmere as "recycled," Harve Benard did nothing. It did not finally change the garments' labels until more than one year later when plaintiffs sought a temporary restraining order on the issue. One reasonable explanation, which a juror may choose to credit, for Harve Benard's refusal to investigate or act on the letter is that Harve Benard intended to deceive the consuming public about the recycled nature of its cashmere. Cf. Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1133 (4th Cir. 1995) (noting that intent may be inferred from a failure to act).

Lastly, defendants argue that Harve Benard's failure to act on the letter for one year does not meet the intent requirement set forth in applicable precedent. Defendants read Resource Developers, 926 F.2d at 140, as standing for the proposition that a defendant's failure to dispel confusion caused by its advertising

circular for four months is insufficient evidence of intent. Since Harve Benard's failure to act is comparable to the defendant's in Resource Developers, defendants conclude that there is insufficient evidence to support a finding of intent.

Even if we were to adopt defendants' reading of Resource Developers, we remain unpersuaded by their argument because the circumstances of this case are far more compelling. First, the fact that defendants waited for more than a year before changing the blazers' mislabeling is far more probative of intentional deceit than waiting for four months. Second, when referring to the Italian mill's use of recycled cashmere, Pedell noted on the top of the letter, "This is an on-going saga." Drawing all reasonable inferences in plaintiffs' favor, a rational juror could conclude from this sentence that the recycled cashmere issue had been encountered before and -- as the word "saga" suggests -- on a continuing basis. Because this "saga" probably began or could have begun a considerable amount of time before January 1995, we decline defendants' invitation to place a time constraint on plaintiffs' evidence of intent.

With respect to the Institute's recycled cashmere claim for injunctive relief, the district court dismissed the claim because the Institute failed to demonstrate evidence of consumer deception. Because the foregoing analysis applies with equal force to the Institute's recycled cashmere claim, we rule that the Institute can avail itself of a presumption of consumer deception.

-27-

Thus, the district court erred in granting defendants' motion for summary judgment on the Institute's recycled cashmere claim.

### D. Causation and Damages

Before delving into the merits of plaintiffs' proffered evidence of causation, we address a threshold evidentiary issue. Defendants argue that since plaintiffs failed to appeal the district court's order striking their experts' reports, plaintiffs have nothing upon which to base a finding of causation. We agree with defendants that plaintiffs did not properly appeal the district court's ruling, but this does not signify that plaintiffs' case on causation necessarily fails.[15] Plaintiffs may still rely on anecdotal statements from prospective customers, evidence of cost differential between fabrics, and factual testimony of expert witnesses to demonstrate causation.

In order to prove causation under § 1125(a) of the Lanham Act, the aggrieved party must demonstrate that the false advertisement actually harmed its business. "A precise showing is not required, and a diversion of sales, for example, would suffice." Quabaug, 567 F.2d at 161 (internal citations omitted).[16]

---

[15] Whether plaintiffs will be permitted to present new expert reports on remand is a matter best left for the district court, as we have not been properly briefed on the issue.

[16] Defendants at oral argument suggested that plaintiffs could not be damaged by Harve Benard's alleged mislabeling because the parties operate in different markets: whereas Harve Benard sells finished garments to retailers, Packard sells fabric to manufacturers. Defendants later conceded, however, that if Packard were to demonstrate that manufacturers refused to purchase its fabric because of defendants' false advertising and concomitant low prices, causation would be proved. Thus, the fact that the two

To satisfy this requirement, plaintiffs present two pieces of interrelated evidence. First, plaintiffs point to Harve Benard's purchase orders which demonstrate that Harve Benard was paying $5 per yard less for the fabric it was using to make its garments than Packard's customers, who were paying for legitimate 10% cashmere fabric. Next, plaintiffs offer uncontradicted evidence that Packard's customers actually reduced their purchases of Packard's cashmere-blend fabric because they could not compete with Harve Benard's lower-priced garments. Specifically, Peter Warshaw, a sales agent for Packard, testified that three of Packard's customers -- Gilmore, RCM, and Perfect Petite -- notified him that they could no longer purchase Packard's cashmere-blend fabric because Harve Benard's lower-priced garments were driving them out of the market. This evidence supports the plaintiffs' claim that Harve Benard's low prices caused Packard lost sales.

The critical question, then, is what enabled Harve Benard to lower its prices to the point that prospective competitors refused to purchase Packard fabric. Based on the evidence presented, a rational factfinder could reasonably infer that the substantial cost savings Harve Benard enjoyed from using non-cashmere or recycled cashmere fabric allowed Harve Benard to lower the price of its blazers, thereby preventing Packard's customers from competing in the market. Indeed, using inexpensive materials that are represented as something more valuable would generally

parties are in different markets does not affect the analysis, so long as plaintiffs can prove the causal connection between the misrepresentations and the harm sustained.

create a substantial competitive advantage by undercutting competitors who correctly represent their products. See Camel Hair, 799 F.2d at 13 (approving the district court's commonsense "inference that the sale of cashmere-blend coats which overstated their cashmere content could cause a loss of sales of cashmere-blend coats which correctly stated their cashmere content"). This reasonable inference, to which plaintiffs are entitled at summary judgment, enables plaintiffs to demonstrate the causal link between the harm they suffered and defendants' misrepresentations.

In response, defendants argue that it is unreasonable to infer that Harve Benard's lower fabric costs translated into lower garment prices given that evidence in the record suggests otherwise. In his affidavit, Harve Benard's vice-president Harvey Schutzbank stated that Harve Benard's garment prices would have remained the same even if it had used the more expensive Packard fabric to manufacture its garments. Based on this evidence, Harve Benard claims it would still have enjoyed the same price advantage that prevented Packard's customers from competing in the market even if the garments had been properly labeled and manufactured with legitimate 10% cashmere fabric. In short, defendants cite Schutzbank's affidavit as proof that it was Harve Benard's low prices -- not its mislabeling -- that caused Packard's lost sales.

We agree with defendants that if they were to present undisputed evidence establishing that their garment prices would have remained the same even if they had used Packard fabric, it would be unreasonable to infer that Harve Benard's lower fabric

costs translated into lower garment prices. However, plaintiffs present competent evidence which casts serious doubt on Schutzbank's testimony. Packard's president John Glidden testified to the relationship between fabric cost and garment price:

> Because Harve Benard was not putting the cashmere in the fabric, they had a tremendously reduced cost. . . . [T]he added expense of putting cashmere in a garment or in a fabric increases the garment's cost; and when [Packard] legitimately labeled [its] fabrics, [the fabrics] were too expensive for the marketplace which Harve Benard was selling to.

Moreover, Warshaw, who has years of experience working with garment manufacturers, testified that "Harve Benard had an unfair competitive advantage in fabric that is the major component of a garment . . . . <u>[B]y far and away the largest component of the total costs of a garment is the fabric</u>." (emphasis added). He also testified to Harve Benard's comparative advantage:

> [T]he garment manufacturers that are available to compete with Harve Benard are savvy, smart, sharp manufacturers who have at their disposal cheap labor, cheap trim, cheap transportation. They have available to them the same range of possibilities for plugging in to a garment, except that if those sharp competitors use a Packard product that's $11.25, they're going to get blown out of the water by Harve Benard['s use of] inexpensive [] fabric.

After weighing all of this evidence, a rational jury could choose to discredit Schutzbank's affidavit, especially considering (1) the commonsense inference that a lower fabric cost translates into a price advantage; (2) the fact that Schutzbank does not provide any quantitative analysis to substantiate his bald assertion that the garments' prices would have remained the same

even if Harve Benard were to have used the more expensive Packard fabric; (3) several "savvy, smart, sharp" garment manufacturers could not do what Harve Benard claims it can -- that is, use Packard fabric and still keep its low prices; and (4) two of plaintiffs' witnesses assert that fabric cost has a substantial impact on garment price.

In the end, the parties present witnesses who hold inconsistent positions on a crucial issue of fact. Rather than weighing in on the matter, we conclude that this dispute is one which a jury is best suited to resolve.

## III.

The district court dismissed plaintiffs' state law claims because it found that since plaintiffs were unable to satisfy the requirements of a Lanham Act claim, they would not be able to prove their state law claims, as the two have overlapping requirements. Because the district court erred in concluding that plaintiffs' proof was insufficient to qualify for relief under the Lanham Act, we reverse its decision to dismiss plaintiffs' state law claims.

## Conclusion

Based on the foregoing analysis, a reasonable factfinder could conclude that the defendants' material mislabeling of their garments deceived the consuming public, enabled defendants to lower their garment prices, and caused Packard to lose sales. For these reasons, we find summary judgment inappropriate, reverse the district court's judgment, and remand the case for action consistent with this opinion.

**<u>Reversed and remanded</u>**.